ORAL ARGUMENT HAS NOT BEEN SCHEDULED

## No. 17-7061

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

KAREN H. SCOTT,

*Plaintiff-Appellant,*

v.

DISTRICT HOSPITAL PARTNERS, L.P., AGENT OF
GEORGE WASHINGTON UNIVERSITY HOSPITAL and
UHS OF DELAWARE, INC.,

*Defendants-Appellees*

---

On Appeal from the
United States District Court for the District of Columbia
Case No. 1:13-cv-00600 (CRC)

---

OPENING BRIEF OF PLAINTIFF-APPELLANT
KAREN H. SCOTT

---

July 24, 2017

Laurence A. Elgin
Suite 900 South Building
601 Pennsylvania Avenue, NW
Washington DC 20004-2601
(202) 628-1114
lawnet.lae@gmail.com
*Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS                                                    i

TABLE OF AUTHORITIES                                                ii

OPENING BRIEF OF APPELLANT-PLAINTIFF
KAREN H. SCOTT                                                       1

I.      STATEMENT OF SUBJECT MATTER AND
        APPELLATE JURISDICTION                                      1

II.     STATEMENT OF ISSUES                                         2

III.    SUMMARY OF ARGUMENT                                         6

III.    ARGUMENT                                                   11

    A.  CONGRESS HAS ELIMINATED THE REASONING
        WITH ITS TWO PRECEDENTS RELIED UPON BY
        THE COURT IN FINDING NO DISABILITY                         11

    B.  HOSTILE WORK ENVIRONMENT (HWE)
        MISTAKE AND ERROR: DISABILITY                              14

    C.  RELATION BACK                                              15

    D.  RETALIATION                                                22

    E.  THE SURREPLY ERRONEOUSLY IGNORED                          22

    F.   POST-JUDGMENT MOTIONS                                     23

    G.  USURPING THE FUNCTION OF THE JURY                          27

    H.  SOME EXAMPLES                                              36

CONCLUSION                                                          37

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGES**

*Adkins v. Astrue,* 2011 WL 2678155 *4, *5 (S.D.Ohio2011)                        18

*Akridge v. Galludet Univ.*, 729 F. Supp. 2d 172, 183
(D.D.C. 2010)                                                                  5, 10

*Amax Coal Co. v. Sevier,* 1994 WL 102145 (7th Cir.1994)
(published in table at 21 F.3d 430)                                              18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)                     28

*Andrews v. Commissioner of Social Security*,
2012 WL 4194656 (M.D.Fla.2012)                                                  18

*Battaglia v. Peabody Coal Co.*, 690 F.2d 106, 109
(7th Cir.1983)                                                                   18

*Beeson v. Colvin*, 2014 WL 98040, *1, *2, *3 (E.D.Mo.2014)                      18

*Blakes ex rel Wolfe v. Barnhart*, 331 F.3d 564, 570
(7th Cir. 2003)                                                                  18

*Brawders v. Astrue*, 793 F.Supp. 2d 485 (D.Mass.2011)                          18

*Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301
(D.C.Cir. 2015)                                                          6, 10, 31, 34

*Christon v. Commissioner of Social Security Administration*,
2008 WL 454641, *2, *3,*4 (W.D.Tenn.2008)                                        18

*Cyr v. Astrue*, 2011 WL 3652493 (D.Conn.2011)                                  18

*Darling v. Savers Life Insurance Co.*, 131 F.3d 133
(4th Cir.1997)                                                                   18

*Edelman v. Lynchburg College*, 535 U.S. 106 (2002)                             23

*Ellis v. Georgetown Univ. Hosp.,* 723 F. Supp. 2d 42, 49-50
(D.D.C. 2010)                                                                    12

*Fields v. Office of Johnson*, 520 F. Supp. 2d 101, 105
(D.D.C.2007)                                                                  29, 30

*Gabbert v. Colvin*, 2014 WL 1725832 (E.D. Mo. 2014)                             18

*GE v. Jackson,* 595 F. Supp.2d 8, 36 (D.D.C.2009)                               29

*Goins v. Colvin*, 2014 WL 4073108 (7th Cir. 2014)                             18

*Haynes v. Williams,* 392 F.3d 478, 483 (D.C. Cir. 2004)                     4, 8, 12

*\* Marshall v. Federal Express Corp.*, 130 F. 3d 1095
(D.C.Cir. 1997)                                          2, 7, 15, 17, 20, 21, 22, 23

*Ndonji v. InterPark, Inc.*, 768 F. Supp. 2d 263, at 279
(D.D.C. 2011)                                                                    21

*Nesemeier v. Commonwealth Land Title Insurance Company,*
2004 WL 2070825 (D.C.C. 2004)                                                    26

*Park v. Howard University*, 71 F.3d 904 (D.C.Cir. 1995)                         27

*Ponce v. Billington*, 652 F. Supp. 2d 71, 73-74 (D.D.C. 2009)                   20

*Rohan v. Chater*, 98 F. 3d 966, 970 (7th Cir. 1996)                           18

*Smith,v. Lynch*, 106 F. Supp. 3d 20 (D.D.C. 2015)                               29

*Sutton v. United Air Lines*, 527 U. S. 471, 492-94 (2002)                      4, 9

*Toyota Manufacturing, Kentucky, Inc. v. Williams* 524
U.S. 184, 198 (2002)                                                            4, 9

*Twombly*, 550 U.S. 544 (2007)                                                   13

*United States v. Prabhu*, 441 F.Supp.2d 1008 (D.Nev.2005)                       18

*Walker v. Ribicoff*, 213F. Supp. 32, 34 (N.D. Ohio 1962)                    18

*Wiles v. Apfel,* 1999 WL 14053(10th Cir. (Okla.) 1999)                    18, 19

*Young v. Colvin* 2014 WL 2009098 (W.D. Wash.2014)                    18

**RULES**

Fed. R. Civ. P. 7(b)                                                        36

Fed. R. Civ. P. 59(e)                          1, 3, 6, 8, 10, 23, 24, 25, 32, 35

Fed. R. Civ. P. 60(b)                              2, 6, 24, 27, 35, 36

**STATUTES**

28 U.S.C.  § 1331                                                           1

28 U.S.C. § 1291                                                            1

42 U.S.C. § 12101 *et seq.*  (ADAAA)                          3, 4, 9, 24

42 U.S.C. §12102  (ADA)                              3, 4, 9, 11, 12, 13,
                                                         19, 20, 23, 24

ORAL ARGUMENT HAS NOT BEEN SCHEDULED

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

——————————

**No. 17-7061**                    **September Term, 2016**

**1:13-cv-00600-CRC**

**Filed On: April 12, 2017 [1670792]**

Karen H. Scott,

       Appellant

  v.

District Hospital Partners, L.P., agent of
George Washington University Hospital and
UHS of Delaware, Inc.,

       Appellees

## OPENING BRIEF OF APPELLANT-PLAINTIFF KAREN H. SCOTT

## I. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The lower court had jurisdiction of this matter under 28 U.S.C. § 1331,

Federal Question in that the plaintiff sued for violation of her rights as a minority

and as a disabled person, *inter alia*. This Court has appellate jurisdiction under 28

U.S.C. § 1291, appeal from a final decision of a district court in that a summary

judgment against the plaintiff disposed of the last of her claims, which was filed

12/29/2016.  A Rule 59(e) Motion was filed 1/26/2017 and was denied 3/7/2017.

Plaintiff filed a Rule 60(b) 3/13/17.  Min. Order denying Rule 60(b) without

allowing motions cycle to proceed, 3/21/2017.  Notice of Appeal filed 4/5/2017.

Thus all of plaintiff's claims were disposed of.

## II. STATEMENT OF ISSUES

In its Memorandum Opinion on the defendants' Motion to Dismiss (ECF 14

07/28/2014): 1) Did the court improperly treat an EEOC refusal to relate back a

complaint as an adjudicated  *res*?  2) Was its analysis of relation back correct in

that it did not correctly apply the law of this circuit as set out in *Marshall v.*

*Federal Express Corp.*, 130 F. 3d 1095 (D.C.Cir. 1095) with regard to papers filed

by the plaintiff when she filed at the EEOC?  3) Did those papers not correctly

identify that the plaintiff had a disability contrary to the court's opinion?  4)  Did

the medical documentation submitted by the plaintiff at the EEOC not identify a

disability consisting of an inability to breathe under conditions which could have

been alleviated by a reasonable accommodation, including one actually used by the

plaintiff herself until she was prevented from using it?  5) Does not an inability to

breathe, particularly when accompanied by eyes affected to the point of being

closed, and a blistering nose, and a burning face, also interfere with the life activity

of being unable to work?  6) Is the condition of dyspnea as recognized in

international and domestic official affliction codes when accompanied by the

2

conditions described not a disability.  7) Did the court erroneously refuse to recognize the substantial case law recognizing dyspnea as a disability under the Americans with Disabilities Act Amendment Act (ADAAA )?  8) Where documents submitted to the EEOC at the time of initial filing identify a disability such as dyspnea and then later the complainant seeks to amend to relate back to those documents does not that arise out of the documents and what they say as opposed to a "new" theory such as in case law where the new charge was not documented with papers filed at the EEOC at the time of initial charge? 9) Are not an EEOC complainant's answers to an intake questionnaire documents to be considered when analyzing relation back?  10) Did the court correctly accept the allegations of the Complaint as true with inferences in favor of the plaintiff together with accompanying papers which it did take note of and fail to infer in favor of the plaintiff with regard to those papers?  11) Did the court, contrary to a substantial body of case law, take on the role of a doctor in analyzing medical disability under the statute and, in doing so, echo the uniformed decision of EEOC personnel who, likewise, had no medical expertise?  12) Did the court correctly analyze the issue of retaliation against the plaintiff for seeking accommodation for her disability in light of the issues set out above?  13) Did the court correctly analyze the issue of hostile work environment in light of the issues set out above?

With regard to the court's Order when the plaintiff filed a Rule 59(e) Motion to Correct/Amend in light of the above (ECF 23 09/23/2014): 1) In light of the issues set out above, did the court correctly interpret the holding of this circuit in *Haynes v. Williams,* 392 F.3d 478, 483 (D.C. Cir. 2004) in that in *Haynes* the plaintiff's employer had an option to allow the plaintiff to choose to work in another building whereas the plaintiff here had no such option?  2) Did the court correctly interpret the ADAAA's amendments to the ADA inasmuch as they strengthened the ADA in cases such as that of the plaintiff?  3) Did the court incorrectly apply the holdings of the Supreme Court in *Sutton v. United Air Lines*, 527 U. S. 471, 492-94 (2002) and *Toyota Manufacturing, Kentucky, Inc. v. Williams* 524 U.S. 184, 198 (2002) inasmuch as plaintiff here had no option to change location or employment role and was refused a very simple and reasonable accommodation which she sought?  3) Did the court err in characterizing plaintiff's disability as something akin to nearsightedness in pilots that could be corrected by glasses?

With regard to motions back and forth, to compel discovery on the part of the plaintiff and with regard to a protective order on the part of the defendants and resulting minute order (01/22/2015 and ECF 31): Did the court err in allowing defendants to not reveal the names of persons rather than just protecting confidentiality and harassment by the use of a chart purporting to show treatment

of employees under Clial Beth Reinhardt when she was in charge of the Case Management Unit as to what they did and did not receive in terms of salary and benefits such as tuition benefits, particularly when it was then shown in the record that the persons shown as receiving tuition benefits under her were not under her supervision when they received the benefits by the deduction of the plaintiff or the fact that one person was not even working in the unit when Ms. Reinhardt was in charge of it.

With regard to the court's Minute Order of 04/20/2015: 1) Did the court explain its decision sufficiently to allow this Court to make an informed decision? 2) Did the court err and make a mistake of law so as to exceed its discretion?

With regard to the court's Minute Order of 05/22/2015; 1) Did the court err in allowing the defendants to make an unwritten oral motion over the telephone during a deposition in violation of the rule requirement that motions be in writing? 2) Was this part of a pattern favoring the defendants, to include not placing decisions in writing as required, and not allowing full briefing of a plaintiff's motion and cutting off plaintiff's counsel during a hearing without allowing him to respond to defendants' counsel?

Did the court err in limiting discovery as applied to plaintiff?

With regard to the court's Summary Judgment Memorandum Opinion (ECF 64 12/29/16): 1) Did the court incorrectly assess factual evidence for the plaintiff

in the record? 2) Did the court incorrectly apply *Akridge v. Gallaudet Univ.*, 729 F. Supp. 2d 172, 183 (D.D.C. 2010) and usurp the duty of the jury with regard to "self-serving" and "uncorroborated? 3) Was there not "corroboration?" 4) Was the finding of "vagueness" contradicted by the evidence in the record?" 5) Did the court incorrectly apply the holding of this Court in *Burley v. Nat'l Passenger Rail Corp.*? 6) Where the evidence showed the systematic firing of African-American or dark-skinned employees and their replacement by whites, did the court correctly assess that the hostile work environment imposed upon plaintiff by Ms. Reinhardt did not support a hostile work environment claim?

With regard to the court's Order denying plaintiff's Rule 59(e) Motion (ECF 70 03/07/17): 1) Did the court overlook clear error in denying the motion? 2) Did the court fail to explain its decision sufficiently to allow this court to properly analyze its decision?

With regard to its Minute Order of 03/21/2017: 1) Did the court correctly assess that there was no showing of fraud or mistake under Rule 60(b)? 2) Did the court fail to explain its decision sufficiently to allow this court to make an informed decision? 3) Did the court err in failing to put its decision in a written opinion as required? 4) Did the court err in cutting off the briefing and not allowing it to go forward as required?

### III. SUMMARY OF ARGUMENT

In deciding against the plaintiff upon defendants' Motion to Dismiss, the court erroneously treated an EEOC refusal to relate back a complaint as an adjudicated *res* and erroneously failed to apply the law of this circuit set out in *Marshall v. Federal Express Corp.*, 130 F. 3d 1095 (D.C.Cir. 1095) with regard to papers filed by the plaintiff when she filed at the EEOC.   The court erroneously failed to acknowledge that, under the Americans with Disability Act as Amended, diagnosed dyspnea is a disability and one that is recognized under international standards as in effect in the U.S. and is recognized as such in reported cases.  The court compounded this error by failing to take cognizance, in the process of arriving at this erroneous conclusion, of the medical documentation submitted by the plaintiff at the EEOC which identified a disability consisting of an inability to breathe under conditions which could have been alleviated by a reasonable accommodation, including one actually used by the plaintiff herself until she was prevented from using it further.  The court erred in failing to face the connection between the inability to breathe and the dyspnea diagnosis.

This error was compounded further inasmuch as the papers submitted by the plaintiff showed an inability to breathe, accompanied by her eyes being affected to the point of being closed, and a blistering nose, and a burning face, conditions clearly interfering with important life activity, namely, being unable to breathe and, concomitantly, unable to work, which the court erroneously refused to

7

acknowledge and take cognizance of.    There was error when the court refused to recognize that the documents submitted to the EEOC at the time of initial filing there identified a disability, which turned out to be when diagnosed dyspnea, and there was further error in that the court refused to analyze error at the EEOC when it denied a relating back attempted amendment of the EEOC complaint.  The court erred still further in failing to consider as a document the plaintiff's answered intake questionnaire given to her at the EEOC when she first went there and was interviewed.

The court erred when it failed to accept the allegations of the Complaint as true with inferences in favor of the plaintiff and failed to correctly assess accompanying papers, even those which it did take note of, also failing to correctly infer from those papers as required.   The court erred in, contrary to established standards and case law, taking on the role of a doctor substituting its uninformed opinion as if it possessed medical expertise, echoing, in doing so, the uniformed decision of EEOC personnel who, likewise, had no medical expertise.

The court erred in failing to find both retaliation and hostile work environment.

With regard to the court's Order when the plaintiff filed a Rule 59(e) Motion to Correct/Amend in light of the above  and it was denied (ECF 23 09/23/2014):

The court erroneously interpreted and applied *Haynes v. Williams,* 392 F.3d 478,

483 (D.C. Cir. 2004) in that in *Haynes* the plaintiff's employer had an option to

allow the plaintiff to choose to work in another building whereas the plaintiff here

had no such option and a reasonable accommodation within the building where she

was compelled to work was denied.  The court erred in failing to apply the

strengthened requirements of the ADAAA.  The court erroneously applied *Sutton*

*v. United Air Lines*,527 U. S. 471, 492-94 (2002) and *Toyota Manufacturing,*

*Kentucky, Inc. v. Williams* 524 U.S. 184, 198 (2002) inasmuch as plaintiff had no

option to change location or employment role and was refused a reasonable

accommodation which she sought with her disability not one that could be

accommodated by something within her control such as wearing glasses.

Minute order (01/22/2015 and ECF 31): Error in allowing defendants to hide

names by use of a chart purporting to show treatment of employees under

Reinhardt when she was in charge of the Case Management Unit as to what they

did and did not receive in salary and benefits such as tuition where persons shown

as receiving tuition benefits received them under another supervisor and, in one

instance, the person was not working in the unit when Reinhardt was in charge of

it.

With regard to the court's Minute Order of 04/20/2015: The court failed to explain its decision sufficiently to allow this Court to make an informed decision and made a mistake of law so as to exceed its discretion.

With regard to the court's Minute Order of 05/22/2015: The court erred in allowing defendants to make an unwritten oral motion over the telephone during a deposition rather than requiring a written motion to compel as part of a pattern favoring the defendants, to include not placing decisions in writing as required, and not allowing full briefing of a plaintiff's motion and cutting off plaintiff's counsel during a hearing without allowing him to respond to defendants' counsel and, further, in limiting plaintiff's discovery in an unbalanced manner compared to defendants.

With regard to the court's Summary Judgment Memorandum Opinion (ECF 64 12/29/16): The court incorrectly assessed factual evidence for the plaintiff in the record and erroneously applied *Akridgev. Galludet Univ.*, *supra* and, futher, usurped the function of the jury with its findings of "self-serving" and "uncorroborated" when there was corroboration and the court's finding of "vagueness"  was contradicted by the evidence in the record.  The court erroneously applied *Burley v. Nat'l Passenger Rail Corp.* where evidence showed the systematic firing of African-American or dark-skinned employees and a work environment hostile to whites generally without regard to any particular task.

With regard to the court's Order denying plaintiff's Rule 59(e) Motion (ECF 70 03/07/17): The court overlooked clear error in denying the motion and failed to explain its decision sufficiently to allow this court to properly analyze its decision.

Minute Order of 03/21/2017: The court erroneously assessed that there was no showing of fraud or mistake, failed to explain its decision sufficiently to allow this court to make an informed decision, failed to put its decision in writing and cut off the briefing, depriving plaintiff of the process to which she is entitled.

## III. ARGUMENT

### A.  CONGRESS HAS ELIMINATED THE REASONING WITH ITS TWO PRECEDENTS RELIED UPON BY THE COURT IN FINDING NO DISABILITY

The two decisions relied upon by the court in finding that the plaintiff had no disability under the statute were not decided based on the ADA as amended in 2008.  42 U.S.C. § 12101 *et seq.*, the jurisdictional provision cited in the Complaint (¶ 2) incorporates the 2008 amendments.  The events here upon which plaintiff based her claim of disability discrimination occurred after the 2008 amendments were in effect as part of the code section alleged by the plaintiff.  The definitions section in the code when the events here transpired is at 42 U.S.C. §12102 where subsection (4) is: "Rules of construction regarding the definition of disability."  There the code states: "The definition of "disability" in paragraph (1) shall be construed in accordance with the following:".  It then goes on to state in ¶

11

(D): "An impairment that is episodic or in remission is a disability if it would "(i) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as," and then goes on to say, in sub-¶ (III): "reasonable accommodations or auxiliary aids or services;"  Plaintiff requests that the Court take notice that the amendments thus now in the U.S. Code generally strengthen the ADA for the benefit of plaintiffs and that those strengthening amendments include those just quoted.

The significance of that here is that the court's finding that the plaintiff does not have a disability under the ADA is based on two cases, *Haynes v. Williams* 392 F.3d 473, 483 (D.C. Cir. 2004), and *Ellis v. Georgetown Univ. Hosp.*, 723 F. Supp. 2d 42, 49-50 (D.D.C. 2010).  The events leading to the claim of disability in both cases occurred prior to the 2008 ADA amendments, in the first case clearly so from the decision date and in the second, as set out in the opinion, where it was made clear that the passage of the amendments did not take retroactive effect when the events at issue occurred before the amendments went into effect.  Oddly, the court, while relying on *Ellis* for a finding that the plaintiff did not have a disability under the ADA, did not, apparently read it carefully enough to look up the amendments as referred to in the decision.  The court's reasoning, in finding that the plaintiff did not have a disability under the ADA was that that was so because her

symptoms could be alleviated by her working out of a different building or location within a building as an accommodation.   But that would not alter the fact that she was compelled to work where she did suffer from the affliction she alleged and was refused even the simpler accommodation of having a door open to improve air circulation as alleged in the Complaint.

The court compounded this mistaken error when it engaged in selectively choosing to focus on a single ¶ in the Complaint.   The court, (ECF14 p. 9) found that plaintiff failed to plead a disability under the ADA.[1]   It gave as reasons for this conclusion that 1):

> Scott fails to allege any facts to support a reasonable inference that the dust in her office "triggered" a latent medical condition, Comp. ¶ 39, as opposed to the far more logical conclusion to be drawn from the events described in her complaint, that she simply experienced shortness of breath as symptom of inhaling dust.  See Twombly, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level").

This assertion is contradicted by what is alleged in the Complaint.  See, at ECF 1, ¶¶ 21, 23.  In particular ¶ 23 alleges that she was diagnosed by a doctor at Georgetown hospital with a specifically disease coded affliction known in physicians references as "shortness of breath," with the quotes indicating a technical term for a disease.  Rather than treating the allegations above as true, the court decided to play doctor and speculate about what it stated was a "more logical

conclusion." As a 2nd reason for its finding that the plaintiff did not have a

disability the court stated:

> …to prove disability under the ADA, Scott must allege facts showing that she
> had a physical impairment that substantially limited a major life activity as
> *compared to the general public.*

Thus, ignoring ¶ 21 the court misleads. The general public does not have an

affliction such as was diagnosed at Georgetown, an affliction recognized in the

international and, correspondingly, U. S. disease coding. The court then goes on to

engage further in inaccuracy, asserting, erroneously, that, rather than having the

diagnosed condition alleged by plaintiff, she simply is suffering, like any member

of the public, from the effects of being compelled to work in a "poorly ventilated

and dusty office." Further, the very common name of the coded affliction

"shortness of breath" makes it clear in plain English that the affliction is

"triggered" anywhere that the person afflicted with the condition is subject to

having his or her breathing ability restricted, whether it is by a closed physical

space, smoke, or both. The person not afflicted with "shortness of breath" may

have coughing or some other result of such conditions but does not suffer the

symptoms alleged by the plaintiff in ¶ 16. The Complaint makes clear in ¶ 15 that,

although aggravated by dust, the closed nature of the quarters combined with the

restricted circulation of air triggered the affliction and that any such environment

would trigger it. Further, the court misleads at p. 9 where it asserts, first, that

plaintiff alleges that she had difficulty breathing when sitting in "a poorly

ventilated and dusty office," and then drops the "poorly ventilated" and focuses

solely on "the effect of dust on breathing." This misleading switch permeates the

opinion. The court avoided correct logical conclusions and, instead, made

unsupportable inferences in favor of the moving party.

### B. HOSTILE WORK ENVIRONMENT (HWE) MISTAKE AND ERROR: DISABILITY

At pp. 10-11 of ECF14 the court dismissed plaintiff's HWE claims based on

treatment after her attempt to get her disability accommodated based on its error

that she did not have a disability. Compl. ¶¶ 15-24, 28-29. This is reversible.

### C. RELATION BACK

The Complaint put the defendants on notice that the plaintiff had a disability

claim. ¶¶ 15-24. In *Marshall v. Federal Express Corporation*, 130 F.3d 1095, 327

U.S.App.D.C. 302 (D.C. Cir. 1997), the court, citing a 7th Circuit precedent,

considered a paper submitted to the EEOC when a complainant filed there in

analyzing the question of relation back (130 F.3d at 1098,) but found the paper

there to be vague and not to provide notice to the respondent.  Here, by contrast,

as pointed out, defendants were put on notice about plaintiff's disability before she

went to the EEOC and filed her claim according to the allegations in her Complaint

and that notice was specific as to her diagnosed condition as recognized in the

medical codes. It was further pointed out in *Marshall* that the plaintiff there had

not did not seek to amend her original charge or "otherwise bring her termination
[the charge at issue] to the Commission's attention. *Id.* Here by contrast the
plaintiff provided very detailed papers to the Commission when she filed her
charge there and she did attempt to amend her charge to include disability
discrimination. In addition she answered a questionnaire given her at the
Commission when she filed her charges with the Commission in which she
indicated in her answers the facts of the discrimination against her based on her
disability. See Compl. ¶¶ 34-35. And see ¶ 36 where plaintiff alleges that the
Commission investigator, like the judge, decided to play doctor and deny her
relation back based in part on an unqualified medical opinion by a non-doctor and,
like the court, engaged in selective consideration of documents considered,
avoiding those that made plaintiff's case quite conspicuously.

In her Memorandum opposing the defendants' Motion to Dismiss the
plaintiff referred to all of the documents which she submitted to the EEOC when
she filed her Complaint there as well as the questionnaire which she was
administered with her answers. ECF 8, pp. 12-14. In addition, as also noted there
the EEOC intake officer's notes reflect that the officer was told by the plaintiff of
the disability discrimination that she experienced at the hands of the defendants.
See ECF 8-1 through 8-9. As can be seen, the EEOC, like the court, selected to
note only those things which accorded with its desired result. Relation back,

however, is relation back, whether in a court or before an administrative agency.

The documents provided gave it reason to investigate disability discrimination, but,

based on its false conclusion that plaintiff did not have a disability under the law it

chose not to do so.

At ECF14, pp. 5-8 the court engaged in a discussion of relation back, finding

none.  In reaching that conclusion it was selective.  P. 6 is devoting to pointing out

that plaintiff's 2 formal, timely, 2011 EEOC charges do not include disability and

discrimination, which is not at issue in a discussion of relation back where

accompanying papers are the issue.  The court went on at pp. 6-8 to its discussion

of relation back.   P. 6 is largely devoted to a discussion of what was in the formal

charges or growing out of the formal charges, also not at issue where the issue is

the accompanying documents, although it does note that the burden on the plaintiff

at the EEOC is not a heavy one, citing a pre-*Marshall* decision in this circuit, and

goes on to quote from the same case that "[a] court cannot allow liberal

interpretation of an administrative charge to bypass the [EEOC] administrative

process."  In doing so it notes that case referred to took that assertion from a case

31 years before *Marshall*.  At the bottom of p. 6 the court notes that the "charges

themselves…did not place the EEOC on notice."  This does not seem relevant

since the issue is the accompanying documents.

17

At p. 7 the court gets to a discussion of accompanying documents, noting that on her EEOC questionnaire a response of the plaintiff noted her difficulty in breathing and that plaintiff filed at the EEOC what the court termed, using quotes, "disability certificates." These, documents, plaintiff contends, were more than "disability certificates." They were certifications from qualified medical experts, including a Georgetown pulmonologist, as to the plaintiff having a serious affliction recognized in the medical codes, which, in the discovery and attestation that would have followed absent dismissal could have more fully fleshed out in accordance with the allegations in the complaint that the court chose to ignore. The court relies on its playing doctor and refers to its section on its finding of no disability, whose erroneous nature has been discussed, to discount these documents followed by an assertion that these "extraneous documents …do not [even] suggest claims of disability…"

There is precedent warning against judicial officers "playing doctor" *Goins v. Colvin*, 2014 WL 4073108 (7th Cir. 2014), citing *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 564, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F. 3d 966, 970 (7th Cir. 1996). And see, about analyzing dyspnea or shortness of breath as a qualifying disability: *Gabbert v. Colvin*, 2014 WL 1725832 (E.D. Mo. 2014), *Young v. Colvin* 2014 WL 2009098 (W.D. Wash.2014), *Wiles v. Apfel,* 1999 WL 14053(10th Cir. (Okla.) 1999), *Walker v. Ribicoff*, 213F. Supp. 32, 34 (N.D. Ohio

1962), *United States v. Prabhu*, 441 F.Supp.2d 1008 (D.Nev.2005), *Andrews v. Commissioner of Social Security*, 2012 WL 4194656 (M.D.Fla.2012), *Adkins v. Astrue,* 2011 WL 2678155 *4, *5 (S.D.Ohio2011), *Cyr v. Astrue*, 2011 WL 3652493 (D.Conn.2011), *Brawders v. Astrue*, 793 F.Supp. 2d 485 (D.Mass.2011), *Beeson v. Colvin*, 2014 WL 98040, *1, *2, *3 (E.D.Mo.2014), *Christon v. Commissioner of Social Security Administration*, 2008 WL 454641, *2, *3,*4 (W.D.Tenn.2008), *Battaglia v. Peabody Coal Co.*, 690 F.2d 106, 109 (7th Cir.1983), *Amax Coal Co. v. Sevier,* 1994 WL 102145 (7th Cir.1994) (published in table at 21 F.3d 430), *Darling v. Savers Life Insurance Co.*, 131 F.3d 133 (4th Cir.1997). There are 8 more reported dyspnea cases which were put before the court in ECF 32-1. One case that is particularly significant here is *Wiles, supra* in that it emphasizes dust as a trigger for dyspnea, a truth directly contradicted and made light of when pointed out in plaintiff's briefing by the non-medically informed court here. There are no reported cases in which a judge found it not to be a disability under the ADA or the ADA as amended, certainly not on a "different location" analysis. This court is the only one in the nation that is not willing to face the reality about dyspnea or shortness of breath. This isolated opinion would apply, *a fortiori*, to EEOC investigators. The choosiness here is just that. Plaintiff pointed this out, post judgment, in ECF22, p. 11. The correct analysis about dyspnea is particularly appropriate at the dismissal stage.

At p. 7 of ECF14 the court gets to plaintiff's argument concerning documents submitted to the EEOC, characterizing them as "several documents." Ignoring the lack of circulation as documents it speaks of "dust" that "made it difficult to breathe," referring to the EEOC questionnaire answers.  It characterizes all of the medical documents as "disability certificate."  Several of them are more than that although the disability certificates are very significant and the court ignore their significance playing doctor.  The court took the position that a failure to check off a box by complainant proceeding *pro se*, who was filling out forms that are not as clear as they might be with which she was unfamiliar overrides accompanying documents in essence, accompanying documents which the court, plaintiff submits, did not adequately analyze and with regard to which it inappropriately played doctor.  It concludes:  "Scott's failure to allege disability…cannot be cured by pointing to these extraneous documents that do not suggest claims of disability discrimination…"   This is to ignore, plaintiff submits, what *Marshall* holds.  It is the law that the documents, while outside the formal complaint form, are not "extraneous" in the sense that they can, therefore, be disregarded.  Further, there is again, the error that we have pointed out about what is a disability under the ADA as amended.  It continues this unwarranted bifurcation at the bottom of p. 7 and onto p. 8, asserting that the disability discrimination charge is a "new substantive theory" that "does not grow out of the

20

subject matter of the original charge.  This is only true if *Marshall* is not followed.
The court supports this finding by, once again, citing a pre-*Marshall* opinion.

The court does (p.8) cite cite two post-*Marshall* opinions for the proposition
that the plaintiff here cannot have relation back because her disability
discrimination claim (and, as discussed below) her retaliation claims do not relate
back to her original EEOC formal, on the form, charges and are a new legal theory.
One case is *Ponce v. Billington*, 652 F. Supp. 2d 71, 73-74 (D.D.C. 2009).  It is a
case where the issue was leave to amend at the district court level after an EEOC
proceeding in which there is no indication that the plaintiff had brought to the
EEOC any accompanying documents in contrast to the substantial accompanying
documents here or had attempted to amend at the EEOC.  Nor was there any
situation of answers to the EEOC questionnaire outside the charge form as there is
here.  Leave to amend, of course, is discretionary.  The case is inapposite because
there does not appear to have been any *Marshall* issue with no accompanying
documents at the EEOC filing and no attempt to amend at the EEOC.

The other such case is *Ndonji v. InterPark, Inc.*, 768 F. Supp. 2d 263, at 279
(D.D.C. 2011).  Again, it does not appear that the plaintiff presented to the EEOC
any accompanying documents or that he answered any questionnaire with any
indication of the charge he was seeking to add at the district court, which was
retaliation.  Nor does it appear that he sought any amendment to add that charge at

the EEOC.  His position simply was the unsupportable one that he could add whatever he wanted at the district court without any indication of *Marshall* being in play.  He did, in addition to checking boxes on the EEOC form, provide some written comments on the form but in them he did not in any way indicate retaliation.  There was no Marshall issue and, hence, the issue did not come into play and the case is inapposite.  These 2 district court cases do not override *Marshall* under the facts of this case.  Here the court here had ample *Marshall* accompanying documents, in contrast to the fact situation in the two cases and simply failed to properly analyze those documents as a whole, picking and choosing what seems to have been a preconceived conclusion that it desired to reach.

## D. RETALIATION

Plaintiff makes essentially the same argument with regard to retaliation. Compl. ¶¶ 28, 29 and ECF8-3, 8-4, 8-5, 8-8.  Again, with regard to relation back at the EEOC, the investigating officer wrongly denied relation back based on his mistaken unwarranted medical opinion about disability and a failure to properly consider submitted documents.

## E.  THE SURREPLY ERRONEOUSLY IGNORED

At ECF 16 the court granted plaintiff's Motion for Leave to File a Surreply (ECF10).  In the Support Memo (ECF10-1) plaintiff pointed out that the defendants misrepresented and did not properly consider the documents submitted

by plaintiff at the EEOC which came under *Marshall*, that there had been no

proper relation back investigation at the EEOC, the EEOC officer, instead of

paying attention and inquiring about submitted documents, played doctor of

psychology and made a judgment that all plaintiff had encountered at the hospital

was a "personality difference" and by doing so engaged in subjective surmise as

opposed to proper analysis, the EEOC interviewer's notes were misrepresented by

the defendants, that evidence of retaliation had been misrepresented and ignored,

that about retaliation, that defendants had mislead with inapposite authority about

relation back, that there had been no reasonable investigation at the EEOC of

issues raised by documents as required under case law cited by defendants

themselves in attempting to counter plaintiff's arguments, that noticeable medical

authority had been ignored and not consulted, that the EEOC had not been

informed by expert opinion and analysis, and that there was no disability here.

   In connection with the proposed Surreply, plaintiff filed an affidavit

(ECF11) about what happened in her EEOC intake interview.  Then, after

defendants filed a Memorandum in Opposition (ECF12), plaintiff filed a Reply

(ECF13).  In it, quite significantly, plaintiff discussed the Supreme Court Opinion

in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002) in which the Supreme

Court pointed to the important requirement that in considering documents at the

EEOC it is required that documents apart from the check-off forms be considered.

The court granted the Surreply at ECF16 but did so without any explanation, although the points made in the Surreply and Motion and Reply should have been considered. The court failed to provide sufficient explanation to allow this Court to analyze and opine on the points made.

## F. POST-JUDGMENT MOTIONS

At ECF20 is a Rule 59(e) Motion from plaintiff addressing the court's Order at ECF15 and its opinion at ECF14. In its Support Memo (ECF20-1) it makes the points about the court deciding under the original ADA rather than the ADA as amended and the failure to follow *Marshall* and *Edelman*, particularly with regard to the medical documents submitted to the EEOC. It introduces the technical term, dyspnea, for plaintiff's disability, as opposed to the plain English term, "shortness of breath," and sets out considerable judicially noticeable medical authority about dyspnea. It goes into detail about why the cases relied upon by the court at ECF14 are inapposite with regard to the relation back issues.

After the normal briefing cycle on the Motion, the court, at ECF23, gave a Memorandum Opinion. In it, again relying upon pre ADAAA cases, while noting the amendments to the ADA, insisted that the pre-ADAAA cases were still controlling despite the copious authority put forward by the plaintiff to the contrary. It persisted in the erroneous one location argument based on pre-ADAAA cases without citing a single post-ADAAA case and such erroneous

24

assertions, contradictory to the medical authority put before it, as that dyspnea is "shared by the general public." Thus, it continued to play doctor. It characterized the medical documentation presented by the plaintiff to the EEOC as "speculative." The court decided that there was no clear error but merely a rehash of arguments previously presented. It's denial of this Rule 59(e) Motion too should be reversed.

Subsequently plaintiff filed a Rule 60(b)(1) Motion (ECF32) pointing out mistakes made by the court in which she sought to correct mistakes made by the court at ECF15 as it incorporated ECF14 and also at ECF23, its Order denying the Rule 59(e) Motion. In the Support Memo plaintiff pointed out that the court, at ECF14, failed to take notice of all of the documents submitted by plaintiff to the EEOC, considering some of them with a broad, somewhat meaningless, non-specific description and did not, mistakenly, consider and actually analyze them specifically in any discernible and meaningful sense, that it engaged in giving its own, uninformed medical opinion in doing so, and that it picked and chose a somewhat misleading description of plaintiff's comment in her questionnaire response at the EEOC as opposed to the medical documents which it clearly did not comprehend the significance of in a medically uninformed analysis. Further, the plaintiff pointed out, it is a mistake to hold that checks or non-checks in boxes on a form do not override medical opinion documents as the court held. The

plaintiff pointed out (pp. 3-4) that she detailed retaliation in her questionnaire

answers.  She pointed out that *Nesemwier v. Commonwealth Land Title Insurance*

*Company*, held that an initial charge on an EEOC questionnaire is validated by

subsequent curing when charging party swears to it in a later filing such as here

plaintiff made at the EEOC when she sought to amend her charges.    She pointed

to the assertions in her questionnaire responses about the retaliation that she

suffered when she sought to do something about the discrimination that she

experienced.  She pointed out that she had notified the employer about what later

became her charges at the EEOC but that when she submitted documents and

answers to the EEOC it was the EEOC that fell down and failed to notify her

employer of what she had already notified the employer of before making charges

at the EEOC.

　　　She pointed out how the court singled out a single paragraph in her

Complaint and ignored those that alleged the discrimination, HWE and retaliation

that she experienced.  (p. 8 ff).  She pointed out how the court ignored the

diagnoses of dyspnea, supported as a serious, codified disability by overwhelming

medical authority.    She pointed out, quoting case authority (p.5) how courts,

including this Court, citing authority, have developed the doctrine that "…in order

to constitute a charge … notice to the EEOC must be of the kind that that would

convince a reasonable person that the Complainant has manifested an intent the

Act's machinery." (Citing cases) and that:

> ...the manifest intent approach indicates that the plaintiff wishes to activate
> the two principal functions of a charge, namely, to (1) provide the EEOC with
> sufficient information to notify the employer that it is accused of
> discrimination and (2) give the EEOC the opportunity to investigate the
> charge…*Park v. Howard University*, 71 F.3d  904 (D.C.Cir. 1995)] at 107…

Here the court, mistakenly, did not, as pointed out, engage in a balanced

examination of what occurred; the actual intent of the plaintiff did not get

examined because it was clear that only one outcome was desired on its part.

As a result, after an unusual motions briefing cycle had proceeded, the court,

on April 20, 2015, issued a one paragraph Minute Order in which it denied

plaintiff's Rule 60(b) Motion.  The Minute Order did not address the issue of

whether or not the court had made a mistake.  It denied the Motion without

analysis or explanation of its reasoning, depriving this Court of any meaningful

opportunity to analyze its reasoning.

## G. USURPING THE FUNCTION OF THE JURY

After the dismissals discussed above, the defendants moved for summary

judgment on plaintiff's remaining counts at ECF60.  After the briefing cycle, the

court ruled in favor of the defendants and summarily judged against the plaintiff on

the remaining counts, the principal one being for race based discrimination, in a

Memorandum Opinion at ECF 64.  Plaintiff's argument for the racial

discrimination was that a particular woman, Clial Beth Reinhardt, while she was

supervisor of the Case Management Unit at the George Washington University

Hospital (GWUH), the unit in which plaintiff worked, systematically acting in a

prejudicial manner toward black (and, in one case, a dark-skinned Filipeňa woman)

as opposed to her treatment and hiring of non-minority employees.   The court's

reasoning in granting summary judgment to the defendants included finding that

such broad systematic racial discrimination was not discrimination against the

plaintiff, even though she was a member of the group which plaintiff claimed was

being discriminated against.

     In considering whether or not to grant summary judgment, the Supreme

Court has repeatedly held that "…at the summary judgment stage the judge's

function is not himself to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In ECF 64 the court engaged in weighing

the evidence put before it and determining what was true or not in the manner

normally reserved for juries.  The court focused on affidavits submitted by plaintiff

in opposition to the summary judgment motion. (pp. 7-8, 11-15)  There were three.

One was from the plaintiff.  Another was from a GWUH employee in the

hospital's pharmacy operation, Wayne Monk, who frequently had occasion, in

performing his duties, to make visits to where Ms. Reinhardt worked.  A third was

from a nurse, Beverly Boykin, who worked with the plaintiff and others in her unit.

Here are some findings that the court made with regard to these affidavits: at

p. 12 the court states, referring to plaintiff's affidavit:

> Under the standards applicable on summary judgment, these statements
> must be disregarded on numerous grounds.[footnote omitted] First, nearly all
> of the above statements are self-serving and uncorroborated, even though they
> constitute the very type of testimony—given the number of individuals
> implicated—for which "corroborating evidence should be readily available."
> Smith,[*v. Lynch,*] 106 F. Supp. 3d at 37 (quoting Fields v. Office of Johnson,
> 520 F. Supp. 2d 101, 105 (D.D.C.2007)). Those assertions therefore cannot
> "create genuine issues of material fact[.]" Id.

This assertion is bit misleading in that in the *Smith* case there was only the

plaintiff's deposition testimony.  Here, since there are two other affidavits in

addition to the plaintiff's affidavit and deposition testimony, the question is

whether or not the two other affidavits are corroborative so as to require that

matters go to the jury.  There is not here a lack of corroboration as in *Smith*.  The

*Smith* opinion does not itself say that Smith's deposition testimony was self

serving.  Rather, it refers to another case, *GE v.  Jackson,* 595 F. Supp.2d  8, 36

(D.D.C.2009) for that observation.   This is a bit puzzling because the *GE* case is a

complex case arising out of proceedings before the EPA and constitutional issues

about the proceedings there.  There are no affidavits presented to the court in the

case in the summary judgment proceeding, nor any deposition testimony. Plaintiff

mentions this because it is not logical that a litigant would present an affidavit that

29

did not serve their interests.  These are the sorts of mistakes that permeate this

Memorandum Opinion.  It is also true that the facts in the *Field* case are that there

was only the testimony of the plaintiff alone, with no accompanying testimony

whose required corroborative value would have to have been evaluated if it had

existed.  The fact situation in *Fields* was quite inapposite.  In it a black female

staffer was suing a black female Member of Congress for alleged racial and sex

discrimination.  There was no corroborative testimony so that the court there

emphasized the need for there to have been a comparator, some other black and/or

female employee who was being discriminated against.

Here the plaintiff identified a number of other black and one dark skinned

employee who were discriminated against, and caused to be fired by the supervisor

Reinhardt as backed up by her supervisor.  Here, therefore, there is a question of

broad discrimination against the black and dark skinned that was raised.  In

corroboration Boykin testified that Reinhardt, from the moment she entered the

supervisory position, was systematically getting rid of black employees in favor of

whites (ECF 61-5).  (The court's observation that she could not know this defies

common sense.  Anyone working in close proximity with people knows when

people are fired.)  Monk's testimony (ECF61-6) about being subjected to a racial

slur by Reinhardt is corroborative about a broad bias.  The court's reasoning is

mistaken in that it holds that a general bias against the black and dark-skinned

cannot support a bias case brought by a member of that group.   There was ample evidence for a jury to decide that question.

This mistaken approach by the court is emphasized by its reliance on *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C.Cir. 2015) (ECF) "(noting that, to rely on comparator evidence to show pretext, a plaintiff must show that "all of the relevant aspects" of the relevant "employment situation[s] were nearly identical").  As plaintiff pointed out in her Memorandum in Opposition to the defendants' Summary Judgment Motion (ECF61), *Burley* was case in which the body that decided, at the administrative appeal level that was involved, did not even know the race of the two people with regard to whom that one had been treated better than the other for reasons based on race.  There were only two people involved.  There was no issue of broad based race discrimination against one group of minority people in favor of white people.  There was no corroboration of any kind.  The primary issue was one involving the fact that driving a locomotive through a warning light could lead to someone on the tracks ahead being struck fatally.  In short its facts have no equivalence to this case, and the reasoning of the court based on it is mistaken.

Another mistake by the court illustrating its desire to not let the jury decided is its analysis of the Monk affidavit.  Here is what the court said:

Scott submits a final declaration from Wayne Monk, Sr., an African-American former pharmacy technician at the hospital. See Pl.'s Opp'n, Ex. 3 ¶¶ 3, 6. He recounts an incident where he walked near the nurses' lounge, an area where Reinhart was present, to see the progress of some remodeling. Id. ¶¶ 7–8. Monk claims that Reinhart approached him and "said in a very nasty, malicious[,] and offensive tone: 'You people don't belong here.'" Id. ¶ 9. Monk spoke to Human Resources about the remark—which he interpreted as being directed at African-Americans—and two days later, he "received a card" from Reinhart, apologizing for offending him and explaining that "it was not her intent to do so." Id. ¶¶ 18–19. For a number of reasons, these allegations simply cannot make it a matter of genuine dispute whether Scott was terminated based on her race. Given that Monk was in an area designated for nurses, and that there were numerous African-American nurses as alleged by Scott and Boykin, it is highly likely that Reinhart's comment referenced non-nurses rather than African-Americans. Even under the unlikely assumption that the comment was racially tinged, it was isolated, directed at an employee other than Scott, and spoken on an unidentified past date. Its evidentiary value is therefore highly attenuated.

If, instead of "you people," Ms. Reinhardt had used the n-word, it is doubtful that the court would have taken the same approach to Mr. Monk's affidavit and found it to be non-corroborative. The mistake here, plaintiff submits, is that a white judge is not familiar with what the phrase "you people" means to black people. After the court's Memorandum Opinion (ECF64) and its corresponding Order (ECF65) plaintiff filed a Rule 59(e) Motion to Alter or Amend (ECF66). In her Support Memo (ECF66-1), at pp. 11-13, the plaintiff set out quotes from numerous, noticeable, respected authorities on disparaging race slurs, along with links to those authorities as to the mistaken notion of the judge that "you people" is not, to blacks in this country, an immediately identifiable racial slur. Further, plaintiff again points out, we are dealing here with case involving a general racially

discriminatory attitude toward all black and very dark skinned people.  In such a

situation it is sufficient to show that, in a situation where many blacks are caused

to be fired and replaced by whites and are systematically (with maybe only an

occasional exception) one is black and was fired to raise an issue that a plaintiff is

entitled to have decided by a jury.

Plaintiff examines what the court said about the witness Beverly Boykin and

her affidavit.  First plaintiff looks at some of what Ms. Boykin did say in her

affidavit.

14) I wrote up complaints against Beth Reinhardt about her discriminatory and abusive behavior toward me on several occasions and submitted them to Erin in the HR department (although I understand that in this lawsuit GWUH has made excuses for not producing the reports) so nothing ever happened as a result of my complaints.

15) Beth Reinhardt systematically, one by one, was getting rid of the black Utilization Review Nurses, and also the black department secretary, Denise Vernon, and Karen Scott-Williams too after I was terminated.

16) Dianne Miller was an African-American female RN who started as a temporary worker, consequently hourly paid.  Beth Reinhardt systematically gave her bad work schedule choices while she gave very good work schedule choices to comparable white workers.  Diane Miller complained about it but her complaints fell on deaf ears.  As a result she left GW Hospital and got a job at Howard University Hospital.

17) Shelly Nembhard was a African descent British-Jamaican RN with a strong British accent.  Beth was also very harsh to her.

18) Several African-American or African descent employees were fired, forced out or abused to my knowledge during the time I worked there.  I recall a young white male who was also was going to school who was given all the schedule flexibility he wanted including time off to study for exams, go out of town for Spring break at school etc.

19) This systematic pattern of discrimination by Beth Reinhardt became so blatant, that those of who were left would talk about it in the cafeteria at lunchtime and wonder who would be next.

The court's observations about the Boykin affidavit, which are quite brief, considering the length and scope of the Boykin affidavit, are found at pp. 13-14. The court starts its findings about Boykin's affidavit by stating that: "Boykin primarily complains that Reinhart gave two white social workers at the hospital flexible working hours arrangements, but was not similarly flexible with Boykin's schedule. See Id. ¶¶ 5-6, 10." With regard to the court's pointing to ¶ 5: the paragraph is a long one, the longest in the affidavit. What the court refers to is in the first few lines. So the court selects a few lines from a lengthy paragraph, ignoring a plethora of other material in that paragraph and in all the other many paragraphs of the affidavit. The assertion that the few lines are "primary" is mistakenly inaccurate.

¶ 6 does deal with disparate treatment accorded by Reinhardt to 2 white social workers compared to Boykin with regard to Reinhardt, what she had or did not have them do, compared to Boykin. This disparate treatment is not, it is clear, relative to job function but simply, like the use of "you people," toward blacks, corroboration of a general discriminatory attitude on the part of Reinhardt. It does not relate to what is set out in *Burley, supra*. The court goes off on an unsupportable tangent.

¶ 10 does not deal with two particular social workers but rather with discrimination in the treatment according all the social workers who were, with one

34

exception, it seems, all white and the largely black nursing contingent.  The court unsustainably stretches.

The court then, toward the end of its brief discussion of Boykin's affidavit chooses some of the personal hostile treatment that Boykin received from Reinhardt, and use the fact that some blacks did not receive exactly the same hostile treatment to pick and choose in order to hold that Boykin's observations about generally better treatment of whites vs. blacks is, therefore, not to be believed at the summary judgment stage.  This usurps the function of the jury.  It is entirely possible that one black can receive better treatment than another black in some particular and it does not negate that there is overall, general discriminatory treatment based on race.  The court spent such little space discussing the Boykin affidavit because of its strength; it is the hardest to discredit even when there is a preconceived notion to do so.  The basic requirement is that all of the evidence at summary judgment be considered as a whole; it is mistaken to pick and choose to assist one side, which was what was done here.

Subsequently to the Memorandum Opinion at ECF64 plaintiff filed a Rule 59(e) Motion to Alter or Amend (ECF66) and then a Rule 60(b)(1) Motion to Reconsider (ECF71).   The former was denied after a briefing cycle in a single page Order devoid of any analysis or reasoning (ECF70).   The latter was denied in a single page Minute Order on March 21, 2017 that consisted of a single paragraph

35

without any reasoning or analysis but merely a platitudinous recital of the reasons for granting such a motion. The Rule 60(b) Motion was filed on March 13, 2017, 4 days after it was filed, with no opportunity for any further briefing. By this time the court had clearly decided, as had become increasingly obvious from early in the case, who was going to win, and would not take seriously anything briefed by the plaintiff.

### H. SOME EXAMPLES

Rule 7(b) (1) and (2) of the Fed.R.Civ.P. require that a request for a court order be made by motion which must be in writing unless made during a hearing or trial, and the motion must state with particularity the grounds for which it is sought. See ECF 38 showing where defendants were not held to this rule. In a Minute Order on 5/22/2015 the court ordered that the defendants were to provide to the plaintiff the names of employees who were disciplined by plaintiff's supervisor. The defendants were also ordered to conduct additional searches regarding disciplinary actions and complaints of discrimination against Scott's supervisor. The defendants never did these things. The court forbade the plaintiff from filing further motions to compel.

See ECF 48, 49. The defendants never provided the plaintiff with the names of the employees disciplined by plaintiff's supervisor. Instead they were given a

36

chart with the names of the employees omitted.  See ECF 61-1, ¶ 42.  The anonymous chart had fraud in it.

## CONCLUSION

The lower court should be reversed as to ECF 64 and ECF 14 and the matter should be remanded to proceed to trial with additional discovery allowed.

Respectfully submitted,

/s/


Laurence A. Elgin
Suite 900 South Building
601 Pennsylvania Avenue, NW
Washington DC 20004-2601
(202) 628-1114
lawnet.lae@gmail.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION

I hereby certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(i) that the word count, using Word's word count, of the accompanying brief is 9050 words.

/s

_____
Laurence A. Elgin

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing OPENING BRIEF OF APPELLANT-PLAINTIFF KAREN H. SCOTT to be served upon counsel of record, using the court's electronic filing system, this 24th day of July, 2017.

/s/


Laurence A. Elgin